**JOHN DEERE DUBUQUE WORKS OF DEERE & COMPANY, Appellant,**

v.

**Russel F. WEYANT, Appellee.**

**No. 88–1353.**

Supreme Court of Iowa.

June 14, 1989.

Leo A. McCarthy and Jane C. Mylrea of Reynolds & Kenline, Dubuque, for appellant.

Michael J. Coyle, Norman J. Wangberg and David A. Lemanski of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, SNELL and ANDREASEN, JJ.

ANDREASEN, Justice.

This appeal concerns compensation for occupational hearing loss under Iowa's workers' compensation laws. In dispute is the proper determination of the date of occurrence of injury under Iowa Code section 85B.8 (1987).

I. Russel F. Weyant began working for the John Deere Dubuque Works of Deere & Company (Deere) on January 27, 1959. He remained employed by Deere until his retirement on September 1, 1983. During his employment with Deere, Weyant had been exposed to noise levels measured as high as 91 decibels (dBA) and held more than forty positions in the plant. The last position Weyant held was that of stores and tool crib attendant, which he held from November 15, 1982 until his retirement. While working as a tool crib attendant, Weyant was exposed to noise levels averaging 73 dBA. Prior to being assigned the tool crib position, Weyant had worked as a foundry inspector since December 17, 1979. As a foundry inspector, Weyant was exposed to noise levels of 89 dBA.

On September 3, 1985, Weyant filed for worker's compensation benefits based on occupational hearing loss. Because September 1, 1985 fell on Labor Day weekend, the September 3, 1985 filing was within the two-year statute of limitations. The deputy industrial commissioner awarded permanent partial disability benefits equal to 38.-325 weeks of compensation at the rate of $283.76 per week. On appeal to the industrial commissioner, the commissioner awarded Weyant 55.3 weeks of occupational hearing loss benefits at the rate of $283.76 per week.

Deere sought judicial review of this award. Deere made two challenges to the award. The first challenge dealt with the application of Iowa Code section 85B.8 (1987) which defines the "date of occurrence" of a hearing loss injury. Specifically, Deere argues that it was error for the commissioner to consider Weyant's date of retirement as the date of occurrence of the injury. Rather, Deere argues that the date of occurrence should be November 15, 1982, when Weyant was transferred to a position as tool crib attendant. If the date of occurrence was November 15, 1982, Deere argues that Weyant would not be entitled to benefits because he did not file within the two-year statute of limitations. Deere also contends that the commissioner erred by using the June 10, 1985 audiogram instead of an audiogram done on September 28, 1982. The district court affirmed the commissioner's award.

On appeal, we address the application of Iowa Code section 85B.8. First, we determine whether any of the four events listed in Section 85B.8 can be the date of occurrence or whether the first of the events to occur should be the date of occurrence. Next, we consider the substance of what constitutes a "transfer" to a quiet area. Finally, we review the specific award by the industrial commissioner.

■■■ II. The Iowa Administrative Procedure Act governs judicial review of final agency actions. Iowa Code § 17A.19 (1987). Our appellate review is limited to the correction of errors at law made by the district court. See *Polk County v. Iowa Natural Resources Council*, 377 N.W.2d 236, 239 (Iowa 1985). In determining whether the law has been correctly applied, we give weight to the agency's construction of the statute although we are not bound thereby. See *John Deere Dubuque Works v. Meyers*, 410 N.W.2d 255, 257 (Iowa 1987).

III. The "date of occurrence" which is applicable to claims brought under the occupational hearing loss statute is defined at Iowa Code section 85B.8. That section provides:

A claim for occupational hearing loss due to excessive noise levels may be filed six months after separation from the employment in which the employee was exposed to excessive noise levels. The date of the injury shall be the date of occurrence of any one of the following events:

1. Transfer from excessive noise level employment by an employer.

2. Retirement.

3. Termination of the employer-employee relationship.

The date of injury for a layoff which continues for a period longer than one year shall be six months after the date of the layoff. However, the date of the injury for any loss of hearing incurred prior to January 1, 1981 shall not be earlier than the occurrence of any one of the above events.

*Id.*

When interpreting a statute, our ultimate goal is to ascertain and give effect to the intention of the legislature. *See Kohrt v. Yetter*, 344 N.W.2d 245, 246 (Iowa 1984). We seek a reasonable interpretation that will best effect the purpose of the statute and avoid an absurd result. *Harden v. State*, 434 N.W.2d 881, 884 (Iowa 1989). We consider all portions of the statute together, without attributing undue importance to any single or isolated portion. *Id.* When two interpretations of a limitations statute are possible, the one giving the longer period to a litigant seeking relief is to be preferred and applied. *Meyers*, 410 N.W.2d at 257.

Deere argues that the first event to occur triggers the claim-filing period for occupational hearing loss. The district court held that any of the possible dates of occurrence are appropriate without regard to which occurred first. We disagree with the district court and hold that the first of the events described in section 85B.8 to occur triggers the claim-filing period.

Our holding is consistent with the plain meaning of Iowa Code sections 85.26 and 85B.8, which establish a two-year statute of limitations for workers compensation benefits in occupational hearing loss cases. Section 85B.8 sets forth four events which may constitute the "date of occurrence of the injury" and provides that "any" of these events will trigger the two year statute of limitations. The Industrial Commission has previously faced this issue, although this issue has not been considered on review. In *In Re Declaratory Ruling of John Deere Dubuque Works of Deere & Co.*, III, Iowa Industrial Commissioner Report 147 (February 17, 1983), a deputy industrial commissioner held that the earliest of the events listed in section 85B.8 to occur would trigger the statute of limitations. While this opinion has no binding effect on this court, we find the deputy commissioner's reasoning to be persuasive.

The district court's interpretation of section 85B.8 is contrary to legislative intent and would allow unreasonable results in certain circumstances. We recognize that the worker's compensation statutes should be interpreted broadly in furtherance of their humane objectives. *Meyers*, 410 N.W.2d at 257. The legislature enacted the Occupational Hearing Loss Act to make it easier for a claimant to prove the compensability of hearing loss attributable to prolonged exposure to noise at work. *Muscatine County v. Morrison*, 409 N.W.2d 685, 687 (Iowa 1987). However, our analysis cannot stop at that point. The existence of a statute of limitations manifests an intention to set a limit to the period within which compensation proceedings may be commenced. Under the district court's interpretation, a worker could suffer a hearing loss early in employment, seek prompt treatment, obtain a permanent transfer to a quiet area, and still be afforded the opportunity to wait until two years after retirement to file for worker's compensation. This result would, in effect, render section 85B.8(1) a nullity.

VI. Deere argues that Weyant was transferred to a quiet area on November 15, 1982, when he was assigned the position of tool crib attendant. At issue is whether Weyant was "transferred from an excessive noise level employment" pursuant to section 85B.8 by this move.

Defining what constitutes a transfer from excessive noise levels is an issue of first impression for this court. The industrial commissioner found that the assignment as tool crib attendant was not a transfer under section 85B.8.

[T]he record reveals that claimant [Weyant] was subject to reassignment to varying levels of noise exposure. He experienced those transfers numerous times

throughout his employment with defendant [Deere]. Claimant's move from the inspector position to the tool crib attendant position was not a transfer within the meaning of section 85B.8. Rather, such action was merely a reassignment within the same work force and subject to change.

This finding was an affirmation of the deputy commissioner's decision. The deputy commissioner utilized a four-step analysis to determine whether a change in positions would constitute a transfer under section 85B.8. According to the deputy commissioner, a transfer under section 85B.8 means:

(1) A clearly recognizable change in employment status

(2) which provides a reduction of noise exposure to a level that is not capable of producing an occupational hearing loss and

(3) which is permanent or indefinite in the sense that there is no reasonable expectation that the worker will be returned to a position with excessive noise level exposure in the ordinary course of operations in the employer's business.

(4) It must also actually continue for at least six months.

This four-step analysis provides a reasonable framework for making this decision. This test provides that the change of employment must be a specific change to a low noise area which is not part of a normal or periodic rotation of employees. This test also takes into account the prevailing view that a permanent hearing loss cannot be validly measured until approximately six months' separation from the noisy environment. *See Meyers*, 410 N.W.2d at 257.

■ We approve of this test and affirm the commissioner's finding that Weyant was not transferred from excessive noise level employment under Section 85B.8(1). The date of injury for Weyant was September 1, 1983, the date of his retirement.

V. Deere's final challenge is to the commissioner's use of the audiogram dated June 10, 1985, which revealed a 31.6% binaural hearing loss. Deere asserts that the deputy commissioner was correct to use the audiogram taken September 28, 1982,

which revealed a 21.9% binaural hearing loss. Weyant had several audiograms while employed by Deere. These tests disclosed binaural hearing losses of 39.7% in 1971, 32.2% in 1974, 34.38% in 1978, and 25.3% in 1981. The commissioner relied on the June 10, 1985 audiogram because it was the only audiogram taken after Weyant filed notice of an occupational hearing loss claim.

■ In our review of this agency action, we will affirm the agency's findings of fact, so long as they are supported by substantial evidence in the record and are not unreasonable, arbitrary or capricious. Iowa Code § 17A.19(8)(f) & (g) (1987). Evidence is substantial if a reasonable person would find it adequate to reach the given conclusion, even if a reviewing court might draw a contrary inference. *See Mercy Health Center v. State Health Facilities Council*, 360 N.W.2d 808, 811–12 (Iowa 1985). The fact that an agency might draw inconsistent conclusions does not necessarily suggest that the final conclusion is not supported by substantial evidence. *Id.* at 812.

■ We find that the commissioner's use of the June 10, 1985 audiogram to determine Weyant's hearing loss was supported by substantial evidence. The decision was not arbitrary or capricious. The award of the industrial commissioner is affirmed.

AFFIRMED.